## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARcare, Inc., an Arkansas Corporation, on behalf of itself and all others similarly situated | ) ) ) ) | |
| Plaintiff, | ) | Civil Action No. 1:16-cv-11547-DPW |
| v. | ) ) | |
| Cynosure, Inc. | ) ) | |
| Defendant. | ) | |

### PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASSACTION SETTLEMENT AND <u>APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT</u>

Plaintiff, ARcare, Inc. ("Plaintiff"), on behalf of itself and a class of similarly-situated persons (identified herein as the "Settlement Class"), pursuant to Fed. R. Civ. P. 23 (e), respectfully requests that the Court enter an order (1) preliminarily approving the parties' proposed class action Settlement Agreement (the "Agreement") attached hereto as <u>Exhibit 1</u>, (2) approving the form of Class Notice attached as Exhibits A-C to the Agreement and approving its dissemination to the Settlement Class by facsimile, and mail if facsimile is unsuccessful, and posting to the settlement website, (3) appointing Kurtzman Carson Consultants ("KCC") as the Settlement Administrator, and (4) setting dates for opt-outs, objections, and a fairness hearing.

Plaintiff proposes the following dates:

a.    February 14, 2017 to issue notice to the Class Members;

b.    April 17, 2017 for exclusion requests or objections;

      c.       May 1, 2017 for briefs in support of the settlement and in response to any objection; and

      d.       a date convenient for the Court for a final settlement approval hearing (but not sooner than May 8, 2017).

A proposed Preliminary Approval Order is attached as Exhibit E to the Agreement and will be submitted to the Court electronically.

January 26, 2017               Respectfully submitted,

                               ARcare, Inc. individually and as the representative of a class of similarly-situated persons,

                               By:    */s/* Phillip A. Bock

Randall K. Pulliam, Esq. (pro hac vice)
rpulliam@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
2800 Cantrell Rd., Suite 510
Little Rock, Arkansas 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

Phillip A. Bock (pro hac vice)
phil@classlawyers.com
**BOCK, HATCH, LEWIS & OPPENHEIM, LLC**
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: (312) 658-5500
Facsimile: (312) 658-5555

Alan L. Cantor
**SWARTZ & SWARTZ, P.C.**
10 Marshall Street
Boston, MA 02108
Telephone: (617) 742-1900
Fax: (617) 367-7193

2

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARcare, Inc., an Arkansas Corporation, on behalf of itself and all others similarly situated | ) ) ) ) | |
| Plaintiff, | ) | Civil Action No. 1:16-cv-11547-DPW |
| v. | ) ) | |
| Cynosure, Inc. | ) ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT

Randall K. Pulliam, Esq. (pro hac vice)
rpulliam@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th St., Little Rock, AR 72201
Little Rock, Arkansas 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

Phillip A. Bock (pro hac vice)
phil@classlawyers.com
**BOCK, HATCH, LEWIS & OPPENHEIM, LLC**
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: (312) 658-5500
Facsimile: (312) 658-5555

Alan L. Cantor
**SWARTZ & SWARTZ, P.C.**
10 Marshall Street
Boston, MA 02108
Telephone: (617) 742-1900
Fax: (617) 367-7193

Attorneys for Plaintiff and the proposed Settlement Class

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    Introduction ................................................................................ 1

II.   Background and summary of settlement. ...................................... 2

III.  The Court should grant preliminary approval to the settlement. .................... 6

     A.    The proposed settlement is within the range of possible approval. ........ 6

          1.    The parties engaged in arm's length negotiations. ...................... 9

          2.    The parties exchanged sufficient discovery to recommend settlement. ................................................................. 10

          3.    The proponents of this Settlement are experienced in similar litigation. ...................................................... 13

          4.    There is no objection to the Settlement. ................................... 14

               a.    Plaintiff will request a service award at final approval, as indicated in the class notice. ...................... 14

               b.    Class Counsel will request fees and expenses at final approval, as indicated in the class notice. ...................... 15

V.    The Court should approve notice to the Settlement Class. ........................... 17

V.    The Court should appoint KCC as the Settlement Administrator.. .............. 19

VI.   The Court should schedule a final fairness hearing. ...................................... 19

VII.  Conclusion. ................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) .................................................................................... 21

*Avio Inc. v. Creative Office Solutions, Inc.*, 10-cv-10622 (E.D. Mich. Dec. 10, 2012) ............................................................................................................ 22

*Bailey Brothers Plumbing, Heating and Air Conditioning, Inc. v. Papa's Leatherbarn, LLC*, Case No. 10-cv-80 (W.D. Okla. Nov. 20, 2012) ..................... 22

*Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324 (D. Mass. 2015) ............. 7, 17, 19, 20

*Blue Wave Corp. v. Northend Chiropractic LLC*, Case No. 2010-01571-F (Super. Ct. Suffolk Cty., MA Feb. 3, 2015) ............................................................................... 20

*Boeing v. Van Gemert*, 444 U.S. 472 (1980) ............................................................. 19

*CE Design, Ltd. v. Exterior Systems, Inc.*, 07-CV-66 (N.D. Ill.) ................................ 16

*City P'Ship Co. v. Atl. Acquisition Ltd P'Ship*, 100 F.3d 1041 (1st Cir. 1996) .......... 10

*Daisy, Inc. v. Pollo Operations, Inc.*, Case No. 14-cv-564 (M.D. Fla. Mar. 30, 2016) ......................................................................................................... 17, 20

*Durrett v. Providence Hous. Auth.*, 896 F.2d 600 (1st Cir. 1990) ............................... 7

*Exclusively Cats Veterinary Hospital v. Cas. and Indem. Co., Inc. of MD*, Case No. 11-2370-B (Super. Ct. Worcester Cty., MA Mar. 6, 2014) .................................... 20

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, 08-CV-5953 (N.D. Ill.) ............................ 15

*Geismann v. Allscripts-Misys Healthcare Solutions, Inc.*, Case No. 09-cv-5114 (N.D. Ill. Feb. 16, 2012) ....................................................................................................... 21

*Hawk Valley v. Taylor*, Case No. 10-CV-804 (E.D. Pa.) ................................. 15, 18, 21

*Hinman v. M&M Rental, Inc.*, Case No. 06-CV-1156 (N.D. Ill.) ......................... 15, 21

*Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95 (D. Mass. 2010) .............................. 8

*Holtzman v. CCH*, 07-CV-7033 (N.D. Ill.) ................................................................. 16

*Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) ................................................................................................... 17, 20

ii

*In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135
(D. Mass. 2004) ............................................................................................ 10

*In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21 (1st Cir. 2012).................. 8

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45 (D. Mass.
2010)................................................................................................ 9, 10, 16

*In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125 (D.P.R. 2010) ............. 9

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005)..................................... 8

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ......................... 7

*Ira Holtzman, C.P.A v. Turza*, 728 F.3d 682 (7th Cir. 2013) ..................................... 12

*Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010
(E.D. Mich.)............................................................................ 15, 18, 21

*Kiefer v. Moran Foods, LLC*, No. 12 Civ. 756, 2014 WL 3882504 (D. Conn. Aug. 5,
2014)................................................................................................ 24

*Latorraca v. Centennial Technologies, Inc.*, 834 F. Supp. 2d 25
(D. Mass. 2011) ................................................................................ 19, 20

*Maher v. Zapata Corp.*, 714 F. 2d 436 (5th Cir. 1983) ............................................. 23

*Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013) ........................................................ 12

Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund, 582
F.3d 30 (1st Cir. 2009)..................................................................... 7

*Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, Case No. 12-CV-
80178 (S.D. Fla. Sept. 27, 2016)................................................................ 20

*Physicians Healthsource, Inc. v. Stryker Sales Corp.*, Case No. 12-cv-729 (W.D.
Mich. Mar. 23, 2016) ............................................................... 18, 21

*Rolland v. Cellucci*, 191 F.R.D. 3 (D. Mass. 2000) ................................................... 10

*Saf-T-Gard International, Inc. v. Seiko Corp. of America*, No. 09-CV-0776 (N.D. Ill.)
........................................................................................................... 15

*Sandusky Wellness Center, LLC v. Heel, Inc.*, 12-cv-1470 (N.D. Ohio Apr. 25, 2014)
................................................................................................ 18, 21

iii

*Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016).................................................................. 18, 21

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, Case No. 10-CV-331 (E.D. Wis.) .......................................................................................................... 15, 21

*Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 09-CV-1399 (N.D. Ill.) ...................................................................................................... 16

*Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005)............................................. 19

*The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill.) ................................................................................... 15, 18, 21

*The Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 11-cv-1074 (N.D. Ohio Dec. 3, 2012) ............................................................................................. 22

*Van Sweden v. 101 VT, Inc.*, Case No. 10-CV-253 (W.D. Mich) .......................... 15, 21

*Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956 (3d Cir. 1983).................. 23

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227 ................................................. 2

**Other Authorities**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket Nos. 02-278, 05-338, Order, FCC 14-164, 61 Communications Reg. (P&F) 671, 2014 WL 5493425 (Oct. 30, 2014)................. 13

**Rules**

Fed. R. Civ. P. 23 ................................................................................... 7, 8, 18, 19

L.R. 16.4(a) ....................................................................................................... 7

**Treatises**

7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005)................................................................................................... 18

MANUAL FOR COMPLEX LITIGATION (4TH ED.) § 13.14 (2004)....................................... 7

Manual for Complex Litigation, § 21.661 (4th ed. 2004)............................................ 19

William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 11.41 ..................................... 7

iv

# I.    Introduction

Plaintiff, ARcare, Inc. ("Plaintiff"), on behalf of itself and members of the Class (defined herein), has reached an agreement to settle this class action litigation (the "Action") against Cynosure, Inc. ("Defendant" or "Cynosure") for a settlement fund of $16,000,000.00. At the final settlement approval hearing (the "Final Approval Hearing" or "Settlement Hearing"), the Court will have before it more extensive motion papers submitted in support of the proposed Settlement, and will be asked to decide whether the Settlement is fair, reasonable and adequate. At this juncture, however, the parties request only that the Court grant preliminary approval of the Settlement so that notice of the Settlement may be sent to the Class.

This Memorandum describes the basis for the preliminary approval motion, and sets forth a proposed schedule for the process going forward. The parties respectfully request that this Court enter the proposed Preliminary Approval Order, attached as Exhibit E to the Agreement, which, among other things, will:

a.    preliminarily approve the Settlement between Plaintiff, on behalf of the Class, and Defendant, on the terms set forth in the Settlement Agreement;

b.    certify the Class for settlement purposes only, and appoint the named Plaintiff as the Class Representative, and its counsel, Randall K. Pulliam of Carney, Bates & Pulliam, PLLC, Phillip A. Bock of Bock, Hatch, Lewis & Oppenheim, LLC, and Alan Cantor of Swartz & Swartz, P.C. as Class Counsel;

       c.      approve the form of Notice and the procedure for providing notice to Class Members of the class certification and proposed Settlement; and

       d.      set forth a schedule and the procedures for dissemination of the Notice to Class Members, for requesting exclusion from the Settlement, for objecting to the Settlement, for submitting papers in support of final approval of the Settlement, and for the Final Approval Hearing.

## II.   Background and summary of settlement.

Plaintiff's Class Action Complaint alleges that Cynosure violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), by sending unsolicited advertisements by facsimile to Plaintiff and a putative class of others. Defendant has denied all liability for these claims.

With experienced counsel on both sides, in the interest of efficiency, the parties elected to participate in an information exchange and early mediation process to explore a possible resolution of the claims.

As part of that process, Cynosure first conducted a thorough review of its records of faxing and shared the results with Plaintiff's counsel. Then, through their analysis of those records, and based on extensive experience with such analysis in other TCPA fax cases, Plaintiff's counsel determined that Defendant attempted to send facsimiles promoting product seminars to 76,567 different fax numbers between July 27, 2012 and August 2, 2016. Upwards of 800,000 total facsimiles appear to have been attempted during that time, but transmission records do not exist for the vast majority of the fax campaigns. Compiling the target lists yields a

class of the holders of approximately 77,000 telephone numbers.

The parties negotiated a classwide settlement during a day-long mediation presided over by the Hon. Edward Infante (Ret.) of JAMS, through counsel, in good faith and at arm's length.

Without admitting or conceding any wrongdoing, Defendant has agreed to make $16,000,000.00 available to fund a settlement of this matter. The Parties reached this agreement after reviewing and analyzing the legal and factual issues presented by this action, the risks and expenses involved in pursuing the lawsuit to conclusion, the likelihood of protracted litigation, the likelihood of collecting a possible judgment, and possible outcomes of one or more procedural and substantive appeals. Based upon their review and analysis, Plaintiff and Defendant agreed to and executed the Agreement. <u>Exhibit 1</u>.

The Agreement's key terms are as follows:

    a.   <u>Certification of a Settlement Class</u>. The Parties stipulate to certification of the following "Settlement Class" pursuant to Rule 23 (b) (3): "All persons or entities who were sent one or more facsimile transmissions advertising the availability or quality of property, goods, or services of Cynosure from July 27, 2012 through the date of preliminary approval.'" Agreement at ¶ 38. Excluded from the Class are all current employees, officers, and directors of Cynosure, and the judge presiding over this Action and his staff. *Id.*

    b.   <u>Class Counsel and Representative Plaintiff</u>. The parties have

agreed that Plaintiff will be the Class Representative and that Randall K.

Pulliam of Carney Bates & Pulliam, PLLC, Phillip A. Bock of Bock, Hatch,

Lewis & Oppenheim, LLC, and Alan L. Cantor of Swartz & Swartz, P.C. will

be Class Counsel. *Id.*

        c.    <u>Monetary Relief to the Members of the Settlement Class</u>.

Defendant has agreed to make available $16 million as a settlement fund (the

"Settlement Fund"). Agreement at ¶ 39. Pursuant to the terms of the

settlement, each class member who submits a timely and valid claim form

will be sent a check for $200.00, subject to *pro rata* adjustment in the

following circumstances. *Id.* at ¶¶ 70-74. If the number of claims made would

result in total payments exceeding the Settlement Fund (after the payment of

attorneys' fees, incentive payments, and administration costs (together "Non-

Claim Costs")), then each claimant's payment shall be reduced on a *pro rata*

basis so that the total payments plus Non-Claim Costs  equal $16 million. *Id.*

Conversely, if the number of claims made would result in total payments (*i.e.,*

payments of claims and Non-Claims Costs) not exceeding 40.625% of the

Settlement Fund ($6.5 million), then each claimant's payment shall be

increased on a *pro rata* basis so the total payments equal $6.5 million. Any

portion of the Settlement Fund that is not paid to claiming class members, to

the Class Representative, to Class Counsel, or to the Settlement

Administrator for the Notice Program and the processing and payment of

Claims and any applicable taxes, shall revert to and be kept by Defendant

with the exception of a possible *cy pres* payment discussed *infra* in subparagraph (f). *Id.*

      d.    <u>Class Notice</u>. The parties have agreed to notify the Settlement Class about the settlement by sending the notice and claim form by facsimile and if facsimile is unsuccessful, then by mail. Agreement at ¶¶ 46-47. A long-form notice shall also be posted on the settlement website.  Agreement at ¶ 49. The notice includes instructions about opting out, objecting, or submitting a claim form by fax, mail, or through the settlement website to the Settlement Administrator. Agreement at Exs. A, B, and C.

      e.    <u>The Settlement Administrator</u>. The parties have agreed that Kurtzman Carson Consultants ("KCC") will serve as the Settlement Administrator, issuing the notice as approved by the Court, responding to inquiries from class members about the Settlement, receiving and processing the claim forms, and sending checks to the claimants.  Agreement at ¶¶ 33, 43.

      f.    <u>Potential *Cy Pres* Award</u>. If the total to be paid by Cynosure in connection with the settlement does not exceed 40.625% of the Settlement Fund, any money remaining from stale checks not cashed by claiming class members shall be distributed as a *cy pres* award to charities proposed by the parties and approved by the Court. *Id.* at ¶ 76.

      g.    <u>Settlement Class Opt-Out and Objection Rights</u>. A class member may seek to be excluded from the Class by opting out of the Settlement Class

within the period set by the Court. Agreement at ¶ 53 and Exs. A-C. Any
member who opts out of the Class shall not be bound by any of the Court's
orders or the terms of the Settlement and shall not be entitled to any of the
benefits set forth in the Agreement. Any member may object to the
Settlement in writing within the time set by the Court. Agreement at ¶¶ 54-
55 and Exs. A-C. Plaintiff suggests a 60-day period for opt-outs or objections.

   h. <u>Releases</u>. In consideration of the relief provided by the
Settlement, the Settlement Class will release all claims that were brought or
could have been brought, as defined in the Agreement, in this action against
Defendant and the other released parties. Agreement at ¶¶ 77-79.

   i. <u>Incentive Award and Attorney's Fees and Costs</u>. At the final
approval hearing, Class Counsel will ask the Court to approve an award of
$15,000.00 from the Settlement Fund to Plaintiff for serving as the Class
Representative. Agreement at ¶ 83. Further, Class Counsel will apply to the
Court to approve an award of attorney's fees equal to 25% of the Settlement
Fund ($4 million), plus reasonable out-of-pocket expenses, to be paid from the
Settlement Fund. *Id.* at ¶ 80. Defendant has agreed not to object to these
requests. *Id.* at ¶¶ 80, 83.

## III. The Court should grant preliminary approval to the settlement.

### A. The proposed settlement is within the range of possible approval.

Courts consistently recognize "the clear policy in favor of encouraging
settlements," especially in the class action context. *Durrett v. Providence Hous.
Auth.*, 896 F.2d 600, 604 (1st Cir. 1990) (reversing denial of approval of class action

settlement as an abuse of discretion). *See also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.") Not surprisingly, then, the local rules favor settlement over prolonged litigation. *See* L.R. 16.4(a) ("The judicial officer shall encourage the resolution of disputes by settlement or other alternative dispute resolution programs.")

When the parties have settled a class action, Rule 23(e) requires the Court to approve the settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e) (2). *See Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass. 2015) (Woodlock, J.), *citing Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund,* 582 F.3d 30, 44 (1st Cir. 2009). Courts make this finding through a "'two-stage procedure,'" where "'[f]irst, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing,'" and second "'the final decision on approval is made after the hearing.'" *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 106-07 (D. Mass. 2010) (quoting MANUAL FOR COMPLEX LITIGATION (4TH ED.) § 13.14 (2004)); *accord In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 57 (D. Mass. 2005) (same); *see also In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 25 (1st Cir. 2012) (affirming class settlement where court applied the two-stage procedure).

Here, the parties request that the Court take the first step in the settlement process, which is to grant preliminary approval of the proposed Settlement. The proposed Settlement makes $16 million available to resolve this controversy and provide beneficial relief to the Class. At this time, the parties are asking only that the Court permit notice of the terms of their Settlement to be sent to the Class (to be certified for settlement purposes only); and to schedule a hearing pursuant to Federal Rule of Civil Procedure 23(e) to consider any views expressed by Class Members as to the fairness of the Settlement, including Class Counsel's request for an award of attorneys' fees and reimbursement of expenses and for a service award for Plaintiff. Then, the Court will conduct a final fairness hearing.

"At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval." *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010) (collecting cases). Courts "examine the proposed settlement for obvious deficiencies before determining whether it is in the range of fair, reasonable, and adequate." *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010) (Woodlock, J.) ("*In re M3 Litig.*") (citing MANUAL FOR COMPLEX LITIGATION (4TH ED.) § 21.632)).

"Courts and commentators . . . have developed a presumption that the settlement is within the range of reasonableness when certain procedural guidelines have been followed." *In re M3 Litig.,* 270 F.R.D. at 62-63. Those procedural

8

guidelines are whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (internal quotation marks omitted); *accord In re M3 Litig.*, 270 F.R.D. at 62-63. "When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *City P'Ship Co. v. Atl. Acquisition Ltd P'Ship*, 100 F.3d 1041, 1043 (1st Cir. 1996); *see also Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000) (recognizing a "strong initial presumption" in favor of settlement).

### 1.   The parties engaged in arm's length negotiations.

The Agreement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this case with the assistance of one of the nation's top mediators, Hon. Edward Infante (Ret.) of JAMS. The parties negotiated the Settlement during a day-long mediation in December 2016. After reaching an agreement in principle, the parties' lawyers spent many weeks further negotiating the terms of the settlement agreement, exchanging drafts, and developing procedures and forms for a claims process.

Defendant has agreed to make $16 million available as a settlement fund. Agreement at ¶ 39. The TCPA gives private citizens a right to sue to (i) enjoin future transmissions, (ii) recover the greater of actual monetary damages or $500.00 in damages, or (iii) obtain an injunction plus damages. If a court finds that the

sender willfully or knowingly violated the TCPA, it may increase the award up to three times the amount of damages. Here, each class member who does not opt-out of the Settlement Class and who submits a timely and valid claim form will be mailed a check for $200.00, or their *pro rata* share. *Id.*, ¶¶ 70-74. Class members can claim their share by filling out a simple, one-page claim form confirming that they owned or used the fax number at issue when Defendant sent the faxes. *See* Agreement at Ex. D thereto.

### 2.     The parties exchanged sufficient discovery to recommend settlement.

As part of the parties' efforts at an early mediation process, Cynosure conducted a thorough review of its faxing records and shared voluminous data with Plaintiff's counsel, including copies of template faxes promoting product event seminars, lists of fax numbers targeted, invoices from Defendants' fax broadcaster identifying the number of faxes sent, and available transmission logs and error reports.  With the exception of a single month, logs identifying the particular recipients of each fax broadcast do not exist. Plaintiff has determined that Defendant sent or may have sent facsimile advertisements to 76,567 different fax numbers between July 27, 2012 and August 2, 2016. After negotiating the agreement in principle, Class Counsel interviewed one of Defendant's employees knowledgeable about the Defendant's fax program, which confirmed Plaintiff's conclusions.

In addition to discovery efforts, the parties are aware of legal issues that would arise in the case, but for settlement. One such issue is whether Defendant's

potential defense that it obtained consent from the fax recipients is viable under the TCPA because, Plaintiff alleges, Defendant's faxes did not contain opt-out notices in compliance with FCC regulations. *See, e.g., Ira Holtzman, C.P.A v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); ("Because Top of Mind omitted opt-out notices, it does not matter which recipients consented or had an established business relation with Turza."); *Nack v. Walburg*, 715 F.3d 680, 685 (8th Cir. 2013) ("the regulation as written requires the senders of fax advertisements to employ the above-described opt-out language even if the sender received prior express permission to send the fax.")

In October 2014, the FCC issued an order confirming both that consented-to faxes must contain a compliant opt-out notice and that a notice must comply with *all* requirements; "substantial compliance" is not enough. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket Nos. 02-278, 05-338, Order, FCC 14-164, 61 Communications Reg. (P&F) 671 at ¶¶ 16-21, 33, 2014 WL 5493425 (Oct. 30, 2014).

The FCC Order also provided a process by which a company can seek a "retroactive waiver" of the rule. "Parties should make every effort to file such requests prior to April 30, 2015 . . . [and the Commission] expect[s] these parties to make every effort to file such requests prior to April 30, 2015." 29 FCC Rcd 13498, 13498 (Oct. 30, 2014). The FCC has not treated that April 30, 2015 as a deadline, and has approved many waiver requests submitted after that date. The FCC also made clear in approved waivers that the relief extends only to faxes sent through

April 30, 2015, and "[a]ny non-compliant faxes (i.e., faxes that do not include the required opt-out information) sent after that date are subject to Commission enforcement and TCPA liability." Aug. 28, 2015 Waiver Order, ¶ 11. Cynosure filed such a petition for waiver on October 26, 2016.   Plaintiff filed a response in opposition on November 14, 2016. Cynosure's request has not been acted upon.

Importantly, the FCC Order was subject to Hobbs Act challenges both to the rule requiring compliant opt-out notices on faxes sent with consent and to the availability of waivers to that rule. All challenges have been consolidated into one appeal in the District of Columbia Circuit, styled *Bais Yaakov of Spring Valley, et al. v. FCC*, Appeal No. 14-1234. Those appeals were fully briefed and the appellate court heard oral argument on November 8, 2016. The outcome of the *Bais Yaakov* appeals would have an outsized impact on the class's prospects of recovery in this case.

Should the rule requiring opt-out notices on solicited advertisements be struck down, Defendant would attempt to present evidence of consent both in opposition to class certification and on the merits; if the rule is upheld, Plaintiff would have a far stronger chance of prevailing. Likewise, if the FCC's waivers are upheld, and if Defendant is granted one, the risks of failing to recover for the class rise.

As such, there are risks attendant to further litigation in this matter, and substantial delay and expense. The decision to settle is reasonable considering the

risks of continued litigation. After the conclusion of a trial, there would undoubtedly

be appellate practice. Settlement avoids all that time, expense and uncertainty.

Given this uncertainty, the parties felt it was an opportune time to seek a

negotiated resolution.

>    **3.     The proponents of this Settlement are experienced in similar litigation.**

Plaintiff's attorneys believe this settlement is fair, reasonable, and adequate.

Plaintiff's attorneys have litigated TCPA class actions since 2003 and they have

been appointed class counsel in dozens of such cases. *See, e.g., Hawk Valley v.*

*Taylor*, Case No. 10-CV-804 (E.D. Pa.); *Van Sweden v. 101 VT, Inc.*, Case No. 10-

CV-253 (W.D. Mich); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-

10010 (E.D. Mich.); *Hinman v. M&M Rental, Inc.*, Case No. 06-CV-1156 (N.D. Ill.);

*The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill.); *Sawyer v.*

*Atlas Heating & Sheet Metal Works, Inc.*, Case No. 10-CV-331 (E.D. Wis.); *G.M.*

*Sign, Inc. v. Finish Thompson, Inc.*, 08-CV-5953 (N.D. Ill.); *Saf-T-Gard*

*International, Inc. v. Seiko Corp. of America*, No. 09-CV-0776 (N.D. Ill.); *Targin*

*Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 09-CV-1399 (N.D. Ill.);

*Holtzman v. CCH*, 07-CV-7033 (N.D. Ill.); *CE Design, Ltd. v. Exterior Systems, Inc.*,

07-CV-66 (N.D. Ill.). Additionally, Plaintiff's counsel have successfully negotiated

numerous class-wide settlements in TCPA cases. *See cases cited below*. Additional

details of counsel's experience are provided in the firm resumes attached as

Exhibits 2 and 3.

### 4. There is no objection to the Settlement.

Although Class Members will have an opportunity to comment on and object to the Settlement prior to final approval, currently there is no objection to the Settlement and the sole named Plaintiff—who attended and participated in the mediation—strongly supports it. Thus, "[t]he only practical way to ascertain the overall level of objection to the proposed settlement is for notice to go forward, and to see how many potential class members choose to opt out of the settlement class or object to its terms at the Final Fairness Hearing." *In re M3 Litig.*, 270 F.R.D. at 63.

If the Court grants final approval to the Settlement, Class Counsel will ask the Court to approve Defendant's agreement to pay a service award to Plaintiff, and fees and expenses to Class Counsel, from the Settlement Fund. The class notice informs the Class Members of these requests. The Court is not being asked to approve the awards now, but both are well within the approved range for class actions generally, and in TCPA fax cases specifically. Therefore, Plaintiff does not foresee any objection from Class Members.

### a. Plaintiff will request a service award at final approval, as indicated in the class notice.

A service award is appropriate to reward a plaintiff who has pursued claims on behalf of the class. "Incentive awards serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall." *Bezdek*, 79 F.Supp.3d at 352.

Plaintiff was the catalyst of this case. Plaintiff filed and pursued the action

and its in-house general counsel attended and participated in the mediation. Plaintiff's efforts greatly benefited the Class.

At final approval, Plaintiff will request that the Court approve an agreed service award of $15,000.00 to Plaintiff from the Settlement Fund for serving as the class representative. Other courts have made similar awards in TCPA fax cases. *See, e.g., Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Doc. 120) ($15,000.00); *Daisy, Inc. v. Pollo Operations, Inc.*, Case No. 14-cv-564 (M.D. Fla. Mar. 30, 2016) (Doc. 115) (same); *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, Case No. 12-cv-729 (W.D. Mich. Mar. 23, 2016) (Doc. 289) (same); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) (Doc. 73) (same); *Hawk Valley, Inc. v. Taylor*, Case No. 10-cv-804 (E.D. Pa. Aug. 6, 2015) (Doc. 193) (same); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich. Apr. 15, 2015) (Doc. 90) (same); *Sandusky Wellness Center, LLC v. Heel, Inc.*, 12-cv-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) (same); *The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill. Mar. 4, 2014) (Doc. 243) (same).

### b. Class Counsel will request fees and expenses at final approval, as indicated in the class notice.

At final approval, Class Counsel will request that the Court approve attorneys' fees equal 25% of the Settlement Fund. This amount is within the approved range in class actions. "25% of the settlement fund in fees falls squarely within what is recognized in this circuit as the range of reasonable POF amounts." *Bezdek*, 79 F.Supp.2d at 350, *citing Latorraca v. Centennial Technologies, Inc.*, 834

F. Supp. 2d 25, 27-28 (D. Mass. 2011) ("Courts in this circuit generally award attorneys' fees in the range of 20-30%, with 25% as 'the benchmark,'") (citing cases). *See also Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) (approving award of fees equal to 30% of $7.25 million settlement plus $111,054.06 in expenses and citing with approval a submission showing thirteen cases with awards of 30-39% of common funds in class actions).

In *Boeing v. Van Gemert*, 444 U.S. 472 (1980), the U.S. Supreme Court explained as follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. … [T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf."

*Id.* at 478-479.

Here, Class Counsel's request for 25% of the Settlement Fund plus expenses is both consistent with the "benchmark" in this Circuit for class actions and is at or below the market rate for TCPA cases. *See Bezdek*, 79 F.Supp.2d at 350, *citing Latorraca*, 834 F. Supp. 2d at 27-28 (25% is the benchmark in the First Circuit); *Blue Wave Corp. v. Northend Chiropractic LLC*, Case No. 2010-01571-F (Super. Ct. Suffolk Cty., MA Feb. 3, 2015) (TCPA settlement where fees 1/3 of total benefit) (final approval order attached as Exhibit D); *Exclusively Cats Veterinary Hospital v. Cas. and Indem. Co., Inc. of MD*, Case No. 11-2370-B (Super. Ct. Worcester Cty., MA Mar. 6, 2014) (one third of settlement fund); *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, Case No. 12-CV-80178 (S.D. Fla. Sept. 27, 2016)

(Doc. 230) (25% of fund); *Imhoff Investment, supra* (one third of fund); *Daisy, supra* (25% of fund); *Physicians Healthsource, supra* (same); *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) (Doc. 278) (one third fee); *Wagner Wellness, supra* (same); *Hawk Valley, supra* (same); *Van Sweden, Inc. v. 101 VT, Inc.*, Case No. 10-cv-253 (W.D. Mich. July 30, 2015) (Doc. 245) (same); *Jackson's Five Star Catering, supra* (same); *Hinman v. M&M Rental, Inc.*, Case No. 06-cv-1156 (N.D. Ill. Oct. 24, 2014) (Doc. 264) (same); *Heel, supra* (same); *The Savanna Group, supra* (same); *Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, Case No. 10-cv-331 (E.D. Wis. July 19, 2013) (Doc. 59) (35% of fund); *Geismann v. Allscripts-Misys Healthcare Solutions, Inc.*, Case No. 09-cv-5114 (N.D. Ill. Feb. 16, 2012) (Doc. 142) (one third of fund); *Avio Inc. v. Creative Office Solutions, Inc.*, 10-cv-10622 (E.D. Mich. Dec. 10, 2012) (Doc. 31) (same); *The Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 11-cv-1074 (N.D. Ohio Dec. 3, 2012) (Doc. 84) (30.7% of fund); *Bailey Brothers Plumbing, Heating and Air Conditioning, Inc. v. Papa's Leatherbarn, LLC*, Case No. 10-cv-80 (W.D. Okla. Nov. 20, 2012) (Doc. 97) (one third of fund).

Class Counsel undertook this case on a contingency basis, and achieved an excellent result in a fair and efficient manner through unique capabilities from their years of experience in these types of cases. As indicated above, Class Counsel have been litigating TCPA class actions since 2003, and have litigated class actions for many more years.

## V.  The Court should approve notice to the Settlement Class.

The parties propose to issue notice to the Settlement Class by facsimile, and

if the facsimile fails, then by mail to mailing addresses known to have been correlated to the facsimile numbers. A long-form notice will also be posted to the settlement website. Copies of the proposed notices are attached as Exhibits A-C to the Agreement.

Under federal law, notice of a settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner of notice and the form it takes. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005).

Rule 23 (e) (i) (B) requires that notice of a settlement be provided "in a reasonable manner." Here, the parties have agreed to a reasonable manner of notice by sending the notice to the fax numbers in question, and then if necessary by mail to the addresses associated with the fax numbers, as determined by the Settlement Administrator. The simple, one-page claim form will be delivered with the fax and/or mail notice, so that members of the Class can complete a claim form and return it immediately by fax, mail, or online through the settlement website if they choose.

The contents of the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time

and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." Here, the notice satisfies these requirements. Agreement at Exs. A-C.

The notice meets the legal standards for appropriate notice and satisfies Rule 23 (e). Therefore, the Court should approve the proposed notice and authorize its dissemination to the Class.

## V.   The Court should appoint KCC as the Settlement Administrator.

Courts "often appoint a claims administrator or special master" to handle the administration of a class action settlement. Manual for Complex Litigation, § 21.661 (4th ed. 2004); *see, e.g.*, *Kiefer v. Moran Foods, LLC*, No. 12 Civ. 756, 2014 WL 3882504, at *1, *7 (D. Conn. Aug. 5, 2014). In this case, Plaintiff's counsel and Defendant jointly recommend that the Court appoint KCC as the Claims Administrator. KCC is a professional settlement firm with extensive experience administering class action settlements, including in TCPA class actions. Here, KCC will issue the notice as approved by the Court, respond to inquiries from class members about the Settlement, receive and process the claim forms, and send checks to the claimants.  Agreement at ¶¶ 33, 43. The parties recommend KCC's approval by the Court.

## VI.   The Court should schedule a final fairness hearing.

Finally, Plaintiff requests that the Court schedule a hearing after notice to the class to determine whether the settlement should be finally approved. A proposed Final Approval Order and Judgment is attached as Exhibit F to the Agreement.

## VII.   Conclusion.

WHEREFORE, Plaintiff respectfully requests that the Court enter a Preliminary Approval Order in the form attached as Exhibit E to the Agreement, (a) granting preliminary approval of the proposed settlement, (b) certifying the Settlement Class, (c) directing that the parties notify the members of the Settlement Class about the proposed settlement in the form and manner agreed by the parties (Exhibits A through C to the Agreement), and (d) setting dates for opt-outs, objections, and a final approval hearing.

January 26, 2017                    Respectfully submitted,

                                   ARcare, Inc. individually and as the
                                   representative of a class of similarly-situated
                                   persons,


                                   By:      _/s/_Phillip A. Bock_____

                                   Randall K. Pulliam, Esq. (pro hac vice)
                                   rpulliam@cbplaw.com
                                   **CARNEY BATES & PULLIAM, PLLC**
                                   519 W. 7th St., Little Rock, AR 72201
                                   Little Rock, Arkansas 72202
                                   Telephone: (501) 312-8500
                                   Facsimile: (501) 312-8505

                                   Phillip A. Bock (pro hac vice)
                                   phil@classlawyers.com
                                   **BOCK, HATCH, LEWIS & OPPENHEIM, LLC**
                                   134 N. La Salle St., Ste. 1000
                                   Chicago, IL 60602
                                   Telephone: (312) 658-5500
                                   Facsimile: (312) 658-5555

                                   Alan L. Cantor
                                   **SWARTZ & SWARTZ, P.C.**
                                   10 Marshall Street

20

Boston, MA 02108
Telephone: (617) 742-1900
Fax: (617) 367-7193

## CERTIFICATE OF SERVICE

I am an attorney of record in this case. I hereby certify that on January 26, 2017 I caused a copy of the foregoing to be filed via the Court's ECF filing system, whereupon all counsel of record were served.


/s/ Phillip A. Bock
Attorney for Plaintiff