UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ARcare, Inc., on behalf of itself and all others
similarly situated,

    Plaintiff,

v.                                                          Case No.: 1:16-cv-11547-DPW

Cynosure, Inc.,

    Defendant.

**PLAINTIFF'S SUPPLEMENT IN SUPPORT OF MOTION FOR APPROVAL OF**

**ATTORNEYS' FEES**

The Court has requested this supplemental material for use in determining the reasonableness of Plaintiff's requested attorneys' fees, specifically related to the submitted hourly rates. Plaintiff's Counsel's rates have been approved in multiple cases in various courts and they believe that these rates reflect the prevailing rates in the marketplace for this type of work. Indeed, Plaintiff's Counsel do not recall an instance in which a court did not approve or lowered the same hourly billable rates as those requested by Counsel in this case. In prior briefing and at oral argument Plaintiff's Counsel has set forth that the "Percentage of the Fund" method to determine class action attorneys' fees is approved by the First Circuit and the most widely used method in this district, but Plaintiff's Counsel believe the requested fee is also reasonable using a "lodestar" method.

**DISCUSSION**

**I.**    **Plaintiff's Counsel's Rates Have Been Approved in Many Prior Cases**

The hourly rates requested by counsel in this matter, as set out in Plaintiff's Memorandum in Support of Final Approval, Pg. 22 (D.E. 51), are consistent with the hourly rates charged by Plaintiff's Counsel in each of their respective cases. Both Plaintiff's Counsel's

1

law firms specialize in class action contingency cases on behalf of consumers. Rather than charging different rates based on the nature of a case or its jurisdiction, both firms have "one rate" for each attorney that is billed in every matter. Those rates are used in the requested attorneys' fees in this matter. Additionally, both Plaintiff's Counsel's practices are exclusively contingency-based, such that there are no clients that receive a monthly or other invoice for time worked.

On numerous occasions in prior litigation, Counsel has requested, and had approved, the same rates requested in this matter. Just as in the present case, those requests were closely analyzed to ensure the awarded fee and billable rates were reasonable. For example, the Honorable Lucy Koh recently specifically analyzed and addressed the hourly rates of Carney Bates & Pulliam on February 9, 2018 in *Matera v. Google LLC*, attached as Ex. A. In that case, Judge Koh determined these rates were "reasonable market rates" that themselves "include no risk multiplier" and approved the requested hourly rates along with a lodestar multiplier.[1] *Id*. at 8. Judge Koh lauded Counsel's "quality of representation," which included successfully navigating the issue of standing following the Supreme Court's decision in *Spokeo, Inc. v. Robins*,[2] a factor that increased "the complexity and novelty of issues" in that case. *Id*. at 5-6. And by "taking [the] matter on a contingent basis, Class Counsel assumed considerable risk," leading Judge Koh to determine "that the risk of nonpayment weigh[ed] in favor" of finding Counsel's fee request to be reasonable. *Id*. at 6.

And in a decision from August 18, 2017 in *Campbell v. Facebook*, attached as Ex. B, Chief Judge Phyllis Hamilton considered Carney Bates & Pulliam's fee request and billable

---

[1] The hourly rate of one requested biller, Justin Craig, was reduced $20 per hour by Judge Koh based on his law school graduation year of 2014. Mr. Craig has billed 13.1 hours to this matter.

[2] 136 S. Ct. 1540 (2016).

hourly rates in light of "whether the claimed rate [was] 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Id*. at 3 (quoting *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)). Judge Hamilton found that the established "experience, credentials, and rates of Class Counsel" were "sufficient to warrant the rates sought." *Id*. In fact, Carney Bates & Pulliam has had its billable hourly rates approved approximately 50 times in the last five years. Even in instances when full fee requests weren't granted, Counsel's hourly rates were not the basis for reducing the award.

Bock, Hatch, Lewis & Oppenheim typically is paid based on a percentage of the recovery, but recently had its rates accepted by courts in a lodestar cross-check in *Community Vocational Schools of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, No. 09-cv-1572 (W.D. Pa. October 9, 2019) (Doc. 149) (Conti, C.J.), *Sobol v. Imprimis Pharmaceuticals, Inc.*, No. 16-cv-14339 (E.D. Mich. August 26, 2019) (Doc. 94) (Edmunds, J.), and *13-50 River Road v. Ansam Commercial Kitchen and Ventilation Specialists, Inc.*, No. 16-cv-710 (D. N.J. July 24, 2019) (Doc. 65) (Vazquez, J.). In the instances in which a Court has requested a lodestar analysis, none have found that BHLO's rates were too high.

Plaintiff's Counsel's rates are clearly reflective of their years of experience in complex litigation, the quality of representation they provide, and the considerable risk they undertake in contingent practice. Specifically, in this matter, Counsel had the foresight to conduct settlement negotiations ahead of the impending, game-changing *Bais Yaakov*[3] decision in the D.C. Circuit, leading to a more favorable settlement for the class. The fact that one decision can so drastically alter the merits of a pending suit speaks to the risks inherent in contingent practice. In light of the foregoing, Plaintiff's Counsel's rates are appropriate.

---

[3] *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 1043 (2018).

**II.     Plaintiff's Counsel's Rates Reflect Prevailing Market Billing Rates**

Defining the contours of the market for plaintiff's class action attorneys is inherently difficult. In this practice, Plaintiff's Counsel often advance tens and sometimes hundreds of thousands of dollars in expenses and costs, with no guarantee of recovery in any case. Further, this expenditure of time and expense occurs over many years where no money is guaranteed to be recovered, and where there is a recovery, it occurs at the end of the case.[4] No client ever receives a bill for their services, so the traditional notions of "supply" and "demand" are not applicable in this context.

Each applicable metric that Counsel has found has produced rates consistent with, or higher than, those charged by Plaintiff's Counsel in this case. Indeed, Plaintiff's Counsel's rates are consistent with, or much lower than, even the average rates of counsel whom they work alongside.

   A.     The 2014 ALM NLJ Billing Survey[5]

Counsel's rates are consistent, or lower, than available published billing rates for firms that handle similarly complex litigation. Take, for example, the published rates for Wilmer Cutler Pickering Hale and Dorr, LLP—the law firm representing the Defendant in this matter. Five years ago, in 2014, the average billing rate for all partners at the firm was $905, with a billing rate "high" of $1250. This establishes that the requested rates of Plaintiff's Counsel in this matter are approximately *33% lower* than those of their opposing counsel *five years ago*. While

---

[4] For example, Carney Bates & Pulliam filed a case against Phillip Morris alleging deceptive sales practices related to "light" cigarettes in 2003. After years of litigation, including a successful appeal to the U.S. Supreme Court, this matter was ultimately resolved and CBP was paid in 2017. *See Miner v. Phillip Morris USA Inc.*, 60cv-03-4661, Pulaski County Circuit Court, Arkansas.

[5] Attached here as Ex. C.

Cynosure's counsel has not provided its hourly rate billed in this matter to Counsel at the time of this filing, it can most assuredly be concluded that these rates are higher than those requested by Plaintiff's Counsel in this matter, who achieved an excellent result for their client and for the class as a whole.

And the rates for Cynosure's counsel are not anomalous. Plaintiff's Counsel's rates are lower than the 2014 average partner billing rate—which presumably includes new partners as well as those with over 20 years of experience—of more than 25 percent of the firms surveyed. More than half of those firms, *five years ago*, reported partner billing rates higher than those Plaintiff's Counsel has requested in this matter. Plaintiff's Counsel regularly litigates against parties represented by attorneys from these same firms and performs comparable work. Further, unlike Plaintiff's Counsel, defense counsel incurs no risk in recouping their time expended and are paid each month. Plaintiff's Counsel in this matter have worked for more than three years without compensation. Their rates could reasonably be adjusted higher to account for the risk factor, but instead they reflect reasonable market rates for the work performed.

When, as here, a class action is filed against a company alleging significant damages, the odds are stacked against the Plaintiff. On one side is a publicly traded company with literally hundreds of millions of dollars in assets and access to the most respected lawyers in the country to defend its interests.[6] On the other side is a plaintiff and, in this case, two law firms required to capitalize the litigation. If Plaintiff's Counsel cannot bill at hourly rates comparable to those of defense counsel taking no risk, the odds become insurmountable. *See Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) ("A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent

---

[6] Cynosure was a publicly traded company until it was purchased in a going private transaction for $1.6 billion in March, 2016.

outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high. Cases recognize that attorneys' risk is 'perhaps the foremost factor' in determining an appropriate fee award." (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 54 (2d Cir. 2000), and citing, among others, *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result.")).

A comparison of the average billable rates of defense counsel in similar matters, and of the Defendant's counsel in this matter, demonstrate that Plaintiff's Counsel's hourly rate is appropriate and reasonable.

B.   The Laffey Matrix

The Laffey Matrix[7] provides rates for attorneys practicing in the District of Columbia when fee-shifting statutes allow prevailing parties to cover attorney's fees. *Rolland v. Patrick*, 765 F. Supp. 2d. 75, 77 (D. Mass. Feb. 10, 2011). Though this Court has found that the Laffey Matrix has limited applicability in determining Boston market rates, *see EEOC v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 358 n.16 (D. Mass. Mar. 29, 2013), the metric is nonetheless relevant in demonstrating what lawyers in these practice areas typically bill per hour. The Laffey Matrix currently prescribes an hourly rate of $899 for attorneys who have been practicing for 20 or more years,[8] $747 for attorneys with 11-19 years of experience,[9] $661 for attorneys with 8-10 years of

---

[7] Located at www.laffeymatrix.com/see.html (last visited Oct. 1, 2019).

[8] This rate would be applicable to Mr. Pulliam, Mr. Carney, and Mr. Bates, of Carney Bates & Pulliam; as well as to Mr. Bock of Bock, Hatch, Lewis & Oppenheim.

[9] This rate would be applicable to Mrs. Wyatt-Oldham of Carney Bates & Pulliam; as well as to Mr. Oppenheim of Bock, Hatch, Lewis & Oppenheim.

experience, $458 for attorneys with 4-7 years of experience;[10] and $372 for attorneys 1-3 years out of law school.[11] Using these rates would yield a far higher total lodestar than using counsel's actual submitted rates.

### III. Plaintiff's Counsel's Rates Reflect Reasonable Realization Rates

Plaintiff's Counsel are mindful of the Court's request to provide "Realization Rates" as part of its discussion of their billable rates. Tr. of July 11, 2019 Hr'g, at 28. While this is an inherently difficult process, as discussed below, Plaintiff's Counsel have taken a look at their respective law practices from a broad perspective to attempt to supply the Court with the requested information.

Unlike, presumably, a defense firm billing by the hour, Plaintiff's Counsel do not "write-off" any hours billed. Neither Plaintiff's Counsel in the course of their practices track the number of hours worked which are not ultimately paid.[12] The fact that some hours worked in a plaintiff's contingency firm are not ultimately recouped is fully expected at the outset, as that is the very nature of contingency work. *See, e.g., Jones v. Diamond*, 636 F.2d 1364, 1382. A plaintiff's attorney working on contingency knows that there is no guaranty of success, and accordingly attempts to work enough cases to spread that risk across, with the expectation that some of the

---

[10] This rate would be applicable to Ms. Titolo and Mr. Tourek of Bock, Hatch, Lewis & Oppenheim.

[11] This rate would be applicable to Mr. Orellana of Bock, Hatch, Lewis & Oppenheim.

[12] A look at how Plaintiff's Counsel track their time is helpful. Both firms require their professionals to keep track of their time. Reported time is entered into a computerized software program. Carney Bates & Pulliam uses a software called TimeSlips. Bock Hatch Lewis & Oppenheim uses a similar software called ProLaw. All time is entered one entry at a time into the case at issue. This is tracked for years, and when the need arises for a time report, it is printed for that case. The hours that are worked but never paid are located in the software across hundreds of cases, until closed or written off, but not otherwise tracked or ascertainable.

hours worked will eventually be compensated sufficient to make all of the hours worked a worthwhile venture.

It is for this reason that the concept of a realization rate requires that a contingent fee attorney be paid *more* when successful than the lawyer who is paid by the hour. Indeed, if a contingency lawyer receives the same rate as a lawyer paid by the hour when that contingency is achieved, by definition the contingency lawyer will consistently underperform their hourly-paid brethren. If this were the norm, soon plaintiff's counsel would be unable to bear the risk and contingency fee cases would go away, and along with them the benefits, such as the millions of dollars recovered for the class in this matter. *See Pellegrin v. Nat'l Union Fire Ins. (In re Abrams & Abrams, P.A.)*, 605 F.3d 238, 246 (4th Cir. 2010) ("The risks a lawyer assumes [in making contingency fee arrangements] are not dissimilar to those undertaken, for example, by a realtor on commission, who accepts the possibility of no sale as well as the potential reward of a quick transaction. In addition, it may be necessary to provide a greater return than an hourly fee offers to induce lawyers to take on representation for which they might never be paid, and it makes sense to arrange these fees as a percentage of any recovery. . . . In other words, plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever.")

The fact that plaintiff's counsel has a realization rate of less than 100% is expected, and indeed requires that a recovery exceeding the hourly billable rates be paid. This fact is also why "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases." *Manual for Complex Litigation (Fourth)* § 14.121 (2004).

Based upon an analysis of Class Counsel's respective records, the firms believe that between one-fourth and one-half of all hours worked are eventually compensated. This number is difficult to calculate because a significant amount of the time worked in any given year is for cases that will not resolve until much later, so it is not possible to determine a "snap-shot" of a realization rate, such as a defense firm can do.

According to the 2019 Report on the State of the Legal Market,[13] realization rates for non-contingent billing matters average anywhere from 81-84 percent of a firm's standard billing rates. When compared to a firm's "worked" rates (defined in the Report as "the rates that a firm agrees to with particular clients for work on given matters," *id*. at 9), the realization rate is closer to 89 percent.

Even if this Court decides to base its determination on the limited information available regarding realization rates, Plaintiff's Counsel's billing rates are reasonable as submitted. At the low end of 81 percent, a realized rate of $750, the rate requested by Carney Bates & Pulliam partners, represents a standard rate of about $925. This rate is akin to the $905 average billing rate for all partners at Defense Counsel's firm five years ago.

**IV.     Plaintiff's requested fee award is reasonable under either the POF or Lodestar methods**

The First Circuit allows the use of either the Percentage of the Fund (POF) method or the lodestar method, or a combination of the two, in assessing the reasonableness of a potential fee award in common fund cases. *Roberts v. TJX Cos.*, 2016 U.S. Dist. LEXIS 136987, at *30-32 (D. Mass. Sept. 30, 2016). "Although the First Circuit has not set a presumptive benchmark for percentage of fund awards, other courts in the Circuit have noted that such benchmark has been

---

[13] Published by the Georgetown Law Center on Ethics and the Legal Profession, the Legal Executive Institute, and Thompson Reuters, and attached here as Ex. D.

between twenty to thirty-five percent." *Bacchi v. Mass. Mut. Life Ins. Co.*, 2017 U.S. Dist. LEXIS 184926, at *10 (D. Mass. Now. 8, 2017). In this case, Plaintiff's Counsel negotiated a settlement worth $8.5 million to the class. A fee award within that range would total between $1.7 million and $2.975 million. Plaintiff's Counsel requests $2.125 million, which represents 25 percent of the common fund, or less than the mid-point of the First Circuit award range.

Fee awards in the District of Massachusetts have reflected lodestar multipliers ranging anywhere from 1.0 to 4.0. *Bacchi*, 2017 U.S. Dist. LEXIS 184926, at *16 (citing *In re Relafin Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. Aug. 17, 2005). As of October 14, 2019, Carney Bates & Pulliam has billed 561.8 hours in this matter for a current lodestar total of $382,605.47. Bock, Hatch, Lewis & Oppenheim has billed 488.9 hours for a current lodestar total of $326,258.00. Swartz & Swartz has billed 23.8 hours for a lodestar of $11,900.00. Combined, the lodestar is $720,763.47. This represents a lodestar multiplier 2.95 of Plaintiff's Counsel's requested $2.125 million fee award. Detailed timesheets and expense reports are attached as Group Exhibit E.

ARcare, Inc. individually and as the representative of a class of similarly-situated persons,

By:  */s/* David M. Oppenheim

Randall K. Pulliam, Esq. (pro hac vice)
rpulliam@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th St., Little Rock, AR 72201
Little Rock, Arkansas 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

Phillip A. Bock (pro hac vice)
phil@classlawyers.com
David M. Oppenheim (pro hac vice)
**BOCK, HATCH, LEWIS & OPPENHEIM, LLC**
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: (312) 658-5500
Facsimile: (312) 658-5555

Alan L. Cantor
**SWARTZ & SWARTZ, P.C.**
10 Marshall Street
Boston, MA 02108
Telephone: (617) 742-1900
Fax: (617) 367-7193