## SECOND AMENDED SETTLEMENT AGREEMENT AND RELEASE

This Second Amended Settlement Agreement and Release ("Agreement") is made and entered into this 3rd day of June, 2022, by and among (1) Plaintiff (as defined below), for itself and on behalf of the Settlement Class (as defined below), and (2) Defendant (as defined below), subject to Court approval as required by Rule 23 of the Federal Rules of Civil Procedure. As provided herein, Plaintiff, Class Counsel (as defined below), and Defendant hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a Final Order and Judgment, all claims of the Settlement Class against Defendant in the action titled *ARcare, Inc. v. Cynosure, Inc.*, No. 16 Civ. 11547 (D. Mass.) (the "Action"), shall be settled and compromised upon the terms and conditions contained herein.

## I.    Recitals

1.    On July 27, 2016, Plaintiff ARcare, Inc. filed a class action complaint in the United States District Court for the District of Massachusetts, alleging that Cynosure, Inc. violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and regulations promulgated thereunder by the Federal Communications Commission ("FCC"), by sending facsimile advertisements without the prior express invitation or permission of Plaintiff or putative class members or without an opt-out notice containing the elements prescribed by the TCPA and FCC regulations.

2.    On September 30, 2016, Cynosure filed its answer to the Complaint, denying liability, denying that the case could be certified as a class action, and asserting twelve affirmative defenses against the claims of Plaintiff and the putative class.

3.    On November 8, 2016, the United States Court of Appeals for the D.C. Circuit heard argument in *Bais Yaakov of Spring Valley v. FCC*, No. 14-1234, a challenge to the FCC's authority to promulgate rules governing the content of facsimile advertisements sent to recipients who invited or otherwise permitted communications from the sender.

4.    On November 28, 2016, the Parties participated in a full-day mediation led by the Hon. Edward A. Infante (Ret.) of JAMS, at which the parties reached agreement in principle on terms to settle the Action.

5.    Class Counsel have investigated the facts and law underlying the claim asserted in the Action. Prior to the mediation, Class Counsel requested, and Cynosure produced, data and documents regarding the claims of Settlement Class Members (as that term is defined below). Cynosure also made available for questioning a person with knowledge of the data and documents provided.

6.    The data and documents indicate that Cynosure sent hundreds of thousands of facsimiles promoting seminars. Plaintiff alleges that these facsimiles did not fully comply with the FCC rules at issue in *Bais Yaakov*.

7.  On January 26, 2017, the Parties executed a Settlement Agreement and Release to settle the Action in its entirety subject to approval by the Court. The same day, Plaintiff ARcare, Inc. filed a Motion for Preliminary Approval of Class Action Settlement and Approval of the Proposed Notice of Settlement.

8.  On January 31, 2017, the Parties appeared for a hearing before the Court on Plaintiff's motion, and the Court expressed reservations on the record about ruling on the submissions in their present form and granted the Parties leave to file amended submissions on or before March 3, 2017.

9.  On February 3, 2017, at Cynosure's request, Kurtzman Carson Consultants mailed notices of the proposed settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA"), to the appropriate Federal and State officials.

10. On March 3, 2017, the Parties entered into an Amended Settlement Agreement and Release that replaced and superseded the Settlement Agreement and Release that was executed by the Parties on January 26, 2017.

11. On May 20, 2021, the Parties appeared for a hearing before the Court and the Court expressed reservations on the record about certain aspects of the Amended Settlement Agreement and Release.

12. The Parties subsequently negotiated this Second Amended Settlement Agreement and Release, which replaces and supersedes the Amended Settlement Agreement and Release that was executed by the Parties on March 3, 2017.

13. The Parties now agree to settle the Action in its entirety pursuant to the terms set forth in this Amended Settlement Agreement and Release, without any admission of liability, with respect to all Released Claims (as that term is defined below) of the Settlement Class. The Parties intend this Agreement to bind Plaintiff, Cynosure, and all Settlement Class Members who do not timely request to be excluded from the Settlement (as defined below).

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.  **Definitions**

In addition to the terms defined at various points within this Agreement, the following Defined Terms apply throughout this Agreement:

14. "Cynosure" means Cynosure, Inc.

15. "Claim" means a written request submitted by a Settlement Class Member to the Settlement Administrator seeking a distribution from the Settlement Fund.

16.  "Claimant" means a Settlement Class Member who submits a Claim.

17.  "Claim Deadline" means 90 days after the Notice Deadline.

18.  "Claim Form" means a form provided by the Settlement Administrator for the purpose of making a Claim.

19.  "Class Counsel" means:

> Phillip A. Bock
> BOCK, HATCH, LEWIS & OPPENHEIM, LLC
> 134 N LaSalle St., Suite 1000
> Chicago, IL 60602

> Randall K. Pulliam
> CARNEY, BATES & PULLIAM, PLLC
> 519 West 7th Street
> Little Rock, AR 72201

> Alan L. Cantor
> SWARTZ & SWARTZ, P.C.
> 10 Marshall Street
> Boston, MA 02108

20.  "Class List" means the list of unique, ten-digit numbers to which Cynosure attempted to send one or more facsimile transmissions advertising the availability or quality of property, goods, or services of Cynosure during the Class Period.

21.  "Class Period" means the period from July 27, 2012 to Notice Approval and Preliminary Certification.

22.  "Court" means the United States District Court for the District of Massachusetts.

23.  "Defendant" means Cynosure, Inc.

24.  "Effective Date" means the fifth business day after which all of the following events have occurred:

    a.  All Parties, Cynosure's counsel, and Class Counsel have executed this Agreement;

    b.  The Court has entered without material change the Final Approval Order; and

    c.  The time for seeking rehearing or appellate or other review has expired, and no appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review without material change, no other appeal or

> petition for rehearing or review is pending, and the time period during which
> further petition for hearing, review, appeal, or certiorari could be has finally
> expired and relief from a failure to file same is not available.

Notwithstanding the foregoing, the Effective Date shall not be earlier than 35 days after
Final Approval.

25.  "Final Approval" means the date that the Court enters the Final Approval Order.  In the
event that the Court issues separate orders addressing the matters in Exhibit F, then Final
Approval means the date of the last of such orders.

26.  "Final Approval Order" means the order and judgment that the Court enters upon Final
Approval, which shall be substantially in the form attached hereto as Exhibit F.  In the
event that the Court issues separate orders addressing the matters constituting Final
Approval, then Final Approval Order includes all such orders.

27.  "Notice" means the notices of proposed class action settlement that the Parties will ask
the Court to approve for transmission to the Settlement Class.

28.  "Notice Approval and Preliminary Certification" means the date that the Court enters,
without material change, an order authorizing Notice and preliminarily certifying the
Settlement Class in the form substantially the same as in the attached Exhibit E.

29.  "Notice Deadline" means 14 days after Notice Approval and Preliminary Certification.

30.  "Notice Program" means the methods provided for in this Agreement for giving the
Notice and consists of (1) a faxed notice to each number included in the Class List ("Fax
Notice"); (2) mailed notice to those individuals or businesses associated with facsimile
numbers on the Class List to which facsimile notice is unsuccessful after three attempts,
to the extent those addresses can be reasonably determined ("Mail Notice"); and (3)
Long-Form Notice posted on the Settlement Website.  The form of the Fax Notice, Mail
Notice, and Long-Form Notice shall be substantially in the form attached hereto as
Exhibits A, B, and C and approved by the Court.  The Fax Notice and Mail Notice shall
have the Claim Form, substantially in the form attached hereto as Exhibit D, attached
thereto.

31.  "Objection Deadline" means 60 days after the Notice Deadline.  The Objection Deadline
will be specified in the Notice.

32.  "Opt-Out Deadline" means 60 days after the Notice Deadline.  The Opt-Out Deadline
will be specified in the Notice.

33.  "Parties" means Plaintiff and Cynosure.

34.  "Plaintiff" means ARcare, Inc.

- 4 -

35.  "Released Claims" means all claims to be released as specified in Section XIV hereof.
     The "Releases" means all of the releases contained in Section XIV hereof.

36.  "Released Parties" means those persons and entities released as specified in Section XIV
     hereof.

37.  "Releasing Parties" means Plaintiff and all Settlement Class Members who do not timely
     and properly opt out of the Settlement, and each of their respective predecessors,
     successors, assigns, parent corporations, subsidiaries, affiliates, holding companies,
     divisions, unincorporated business units, joint venturers, partners, insurers, officers,
     directors, shareholders, managers, employees, agents, servants, representatives, officials,
     attorneys, associates, trustees, heirs, assigns, and beneficiaries.

38.  "Settlement" means the settlement into which the Parties have entered to resolve the
     Action. The terms of the Settlement are as set forth in this Agreement.

39.  "Settlement Administrator" means Kurtzman Carson Consultants. Class Counsel and
     Cynosure may, by agreement, substitute a different organization as Settlement
     Administrator, subject to approval by the Court if the Court has previously approved the
     Settlement. In the absence of agreement, either Class Counsel or Cynosure may move
     the Court to substitute a different organization as Settlement Administrator, upon a
     showing that the responsibilities of Settlement Administrator have not been adequately
     executed by the incumbent.

40.  "Settlement Class" means the class defined in Section III hereof.

41.  "Settlement Class Member" means any person included in the Settlement Class.

42.  "Settlement Fund" means the total cash consideration to be made available by Cynosure
     pursuant to Section IV below, being the sum of $8,500,000.00.

43.  "Settlement Website" means the website that the Settlement Administrator will establish
     as soon as practicable following Notice Approval and Preliminary Certification, but prior
     to the commencement of the Notice Program.

## III.   Certification of the Settlement Class

44.  For settlement purposes only, Plaintiff agrees to ask the Court to certify the following
     "Settlement Class" under Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure:

> All persons or entities who were sent one or more facsimile
> transmissions advertising the availability or quality of property,
> goods, or services of Cynosure from July 27, 2012 through the date
> of Notice Approval and Preliminary Certification.

Excluded from the Class are all current employees, officers, and
directors of Cynosure, and the judge presiding over this Action and
his staff.

## IV.   Settlement Consideration

45.   The total cash consideration to be made available by Cynosure pursuant to the Settlement
shall be $8,500,000.00 to cover cash compensation to the Settlement Class, inclusive of
all attorneys' fees and costs, the Service Award (as defined below), and all fees, costs,
charges, and expenses of the Settlement Administrator incurred in connection with the
administration of the Notice Program as set forth in Section VII hereof and the processing
and payment of Claims as set forth in Sections XI and XII hereof.

46.   Cynosure also agrees that upon entry of the Final Approval Order, Cynosure shall be
enjoined from sending advertising faxes that do not comply with the TCPA and any
regulatory rulings promulgated by the FCC, for as long as the Act, and/or any such
regulation of declaratory ruling is effective.

## V.   Settlement Approval

47.   Upon execution of this Agreement by all Parties, Class Counsel shall promptly move the
Court for an Order approving the form and content of Notice and preliminarily certifying
the Settlement Class as defined herein ("Notice Approval and Preliminary Certification
Order"). The proposed Notice Approval and Preliminary Certification Order that will be
attached to the motion shall be in a form agreed upon by Class Counsel and Cynosure,
and substantially in the form as that attached hereto as Exhibit E. The motion for the
Notice Approval and Preliminary Certification shall request that the Court: (1) approve
the Notice Program as set forth herein and authorize Notice on the basis that the terms of
the Settlement are within the range of fair, adequate, and reasonable; (2) provisionally
certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e)
for settlement purposes only; (3) designate Plaintiff as the Class Representative;
(4) appoint Class Counsel; (5) approve the procedures set forth in Section VIII hereof for
Settlement Class Members to exclude themselves from the Settlement Class or to object
to the Settlement; and (6) schedule a Final Approval hearing for a time and date mutually
convenient for the Court, Class Counsel, and counsel for Cynosure, and no earlier than
100 days after the motion for Notice Approval and Preliminary Certification.

48.   Within 10 days of the filing of the motion for Notice Approval and Preliminary
Certification, Cynosure shall serve or cause to be served an amended notice of the
proposed Settlement on the appropriate State and Federal officials under 28 U.S.C.
§ 1715(b).

## VI.   Settlement Administrator

49.   The Settlement Administrator shall administer various aspects of the Settlement as
described in the next paragraphs hereafter and perform such other functions as are
specified for the Settlement Administrator elsewhere in this Agreement, including, but

not limited to, providing Notice to Settlement Class Members as described in Section VII; establishing and maintaining the Settlement Website; administering the Claims process; distributing the Settlement Fund as provided herein; and paying the remainder of any Settlement Fund to Cynosure in the event of a termination of the Settlement pursuant to Section XVII hereof.

50.   The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement, are as follows:

    a.   Obtain from Cynosure the Class List, for the purpose of sending the Fax Notice to Settlement Class Members, and to determine addresses and send the Mail Notice if reasonably practicable;

    b.   Establish and maintain a Post Office box for (i) the submission of Claims; and (ii) mailed requests for exclusion from the Settlement Class;

    c.   Establish and maintain the Settlement Website as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Long-Form Notice, the Notice Approval and Preliminary Certification Order, and such other documents as Class Counsel and Cynosure agree to post or that the Court orders posted on the website;

    d.   Establish and maintain an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

    e.   Establish and maintain a toll-free fax number for Settlement Class Members to submit Claim Forms;

    f.   Respond to any mailed inquiries from Settlement Class Members;

    g.   Process all requests for exclusion from the Settlement Class;

    h.   Provide reports on request, and, no later than five days after the Opt-Out and Objection Deadlines, a final report to Class Counsel and Cynosure that summarizes the number of requests for exclusion and objections received during that period, the total number of exclusion requests and objections received to date, and other pertinent information;

    i.   Payment of any taxes pursuant to paragraph 67;

    j.   At Class Counsel's request in advance of the Final Approval Hearing, prepare an affidavit to submit to the Court that identifies each Settlement Class Member who timely and properly requested exclusion from the Settlement Class;

      k. Process and transmit distributions to Settlement Class Members from the Settlement Fund;

      l. Review, determine the validity of, and respond to all Claims;

      m. Provide reports on request and a final report to Class Counsel and Cynosure that summarizes the number of Claims since the prior reporting period, the total number of Claims received to date, the number of any Claims granted and denied since the prior reporting period, the total number of Claims granted and denied to date, and other pertinent information;

      n. Pay invoices, expenses, and costs upon approval by Class Counsel and Cynosure, as provided in this Agreement; and

      o. Perform any settlement administration-related function at the instruction of Class Counsel and Cynosure, including, but not limited to, verifying that Settlement Funds have been distributed as required by Section XII hereof.

51. The documents specified in paragraph 50(c) shall remain on the Settlement Website at least until Final Approval. The URL of the Settlement Website shall be www.cynosuretcpasettlement.com or such other URL as Class Counsel and Cynosure may subsequently agree upon in writing. The Settlement Website shall not include any advertising, and shall not bear or include the Cynosure logo or Cynosure trademarks. Ownership of the Settlement Website URL shall be transferred to Cynosure within 10 days of the date on which operation of the Settlement Website ceases.

## VII. Notice to Settlement Class Members

52. As soon as Notice Approval and Preliminary Certification is granted, Cynosure will provide to the Settlement Administrator the Class List. The Settlement Administrator shall then implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Notice Approval and Preliminary Certification Order. The Notice shall include, among other information: a description of the material terms of the Settlement; a description of the Settlement Class Members' right to "opt out" or exclude themselves from the Settlement and the Opt-Out Deadline; a description of the Settlement Class Members' right to object to the Settlement and the Objection Deadline; the date upon which the Final Approval Hearing is scheduled to occur; a description of the Claims process; and the address of the Settlement Website at which Settlement Class Members may access this Agreement and other related documents and information. Class Counsel and Cynosure shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Notice Approval and Preliminary Certification Order. Notices provided under or as part of the Notice Program shall not bear or include the Cynosure logo or trademarks or the return address of Cynosure, or otherwise be styled to appear to originate from Cynosure.

53. Notice shall be provided to Settlement Class Members through the Notice Program. Notice shall be provided substantially in a form as that attached hereto as Exhibits A, B, and C.

54. After the Settlement Administrator receives the Class List, the Settlement Administrator (1) shall send the Fax Notice by facsimile transmission to the facsimile numbers included in the Class List; (2) attempt two times to re-send the Fax Notice to any facsimile numbers to which the Fax Notice is initially unsuccessfully sent; and (3) determine, through reasonable efforts, the mail addresses associated with facsimile numbers on the Class List to which the Fax Notice is not successfully sent after three attempts, and send the Mail Notice to those addresses (together, the "Fax and Mail Notice Program").

55. The Fax and Mail Notice Program shall be completed by the Notice Deadline.

56. Within 25 days after Notice Approval and Preliminary Certification is granted, the Settlement Administrator shall post the Long-Form Notice on the Settlement Website.

57. Within seven days after the date the Settlement Administrator completes the Mail Notice Program, the Settlement Administrator shall provide Class Counsel and Cynosure an affidavit that confirms that the Notice Program was completed in a timely manner. Class Counsel shall file that affidavit with the Court as an exhibit to or in conjunction with Plaintiff's motion for final approval of the Settlement.

58. All costs of the Notice Program shall be deducted from the Settlement Fund.

59. Within the parameters set forth in this Section VII, further specific details of the Notice Program shall be subject to the agreement of Class Counsel and Cynosure.

## VIII. Opt Out and Objections

60. Exclusion/Opt Out. Any Settlement Class Member may exclude himself or herself from the Amended Settlement Agreement and Release, and from its binding effect, by sending to the Settlement Administrator, postmarked by the Opt-Out Deadline, a written request to opt out or be excluded from the Settlement. The request must include the individual's name, address, and fax number; a statement that he or she wants to be excluded from the Settlement in *ARcare, Inc. v. Cynosure, Inc.*, No. 16 Civ. 11547 (D. Mass.); and the individual's signature. The Settlement Administrator shall provide the Parties with copies of all completed opt-out requests, and Plaintiff shall file a list of all who have effectively opted out of the Settlement, consistent with the terms of this Agreement, with the Court no later than 7 days prior to the Final Approval Hearing. (Settlement Class Members included on this list shall be referred to as "Settlement Class Opt-Outs.") Any Settlement Class Member who does not timely and validly request to opt out shall be bound by the terms of this Agreement.

61. Objections. Any Settlement Class Member who does not opt out of the Settlement may object to any aspect of the Settlement. Objections must be electronically filed with the Court, or mailed to the Clerk of the Court, with copy to Class Counsel and Cynosure's counsel. For an objection to be considered by the Court, the objection must be

electronically filed or mailed first-class postage prepaid and addressed in accordance with the instructions and the postmark date indicated on the envelope must be no later than the Objection Deadline, as specified in the Notice.

62.     For an objection to be considered by the Court, the objection must also set forth:

    a.  The name of the Action (*ARcare, Inc. v. Cynosure, Inc.*, No. 16 Civ. 11547 (D. Mass.));

    b.  The objector's full name, address, and fax number;

    c.  An explanation of the basis upon which the objector claims to be a Settlement Class Member;

    d.  All grounds for the objection, accompanied by any legal support for the objection;

    e.  The identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection;

    f.  Whether the objector intends to appear at the Final Approval Hearing and, if so, the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

    g.  A list of all other class action settlements to which the objector or their counsel filed an objection;

    h.  A list of any persons who will be called to testify at the Final Approval Hearing in support of the objection; and

    i.  The objector's signature (an attorney's signature is not sufficient).

## IX.     Final Approval Order and Judgment

63.     Plaintiff's motion for Notice Approval and Preliminary Certification will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur. Plaintiff shall file its motion for final approval of the Settlement no later than 7 days prior to the Final Approval Hearing.

64.     The proposed Final Approval Order is attached hereto as Exhibit F.

## X.     Settlement Fund

65.     Within 5 days of the filing of Plaintiff's motion for Notice Approval and Preliminary Certification, the Settlement Administrator shall provide the Parties an estimated amount of the costs to implement the Notice Program, establish the Settlement Website, establish toll-free telephone and fax numbers, and related upfront expenses, and Cynosure shall pay the estimated amount within 10 days after the entry of the Notice Approval and

Preliminary Certification Order. After the upfront payment of costs, the Settlement Administrator shall bill Cynosure monthly for the reasonable costs of settlement administration. Any amount paid by Cynosure for the upfront payment of costs that was not used will be deducted from the first monthly bill from the Settlement Administrator.

66.    In exchange for the mutual promises and covenants in this Agreement, including, without limitation, the Releases as set forth in Section XIV hereof and the dismissal of the Action upon Final Approval, within five days of Final Approval, Cynosure shall transfer to the Settlement Administrator the amount of the Settlement Fund less the amount of the settlement administration costs billed to date to be deposited into an interest-bearing account held by an FDIC-insured financial institution (the "Settlement Fund Account"). Class Counsel and Cynosure shall agree on the FDIC-insured financial institution at which the account shall be established.

67.    The monies in the Settlement Fund Account at all times shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Settlement Fund Account or otherwise, including any taxes or tax detriments that may be imposed upon Class Counsel, Cynosure, or Cynosure's counsel with respect to income earned by the Settlement Fund Account for any period during which the Settlement Fund Account does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), shall be paid out of the Settlement Fund Account. Plaintiff and Class Counsel, and Cynosure and its counsel, shall have no liability or responsibility for any of the Taxes. The Settlement Fund Account shall indemnify and hold Plaintiff and Class Counsel, and Cynosure and its counsel, harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

68.    The Settlement Fund shall be used for the following purposes:

   a.  Distribution of payments to Claimants whose Claims the Settlement Administrator has approved pursuant to Section XII hereof;

   b.  Payment of the Court-ordered award of Class Counsel's attorneys' fees and costs pursuant to Section XV hereof;

   c.  Payment of the Court-ordered Service Award to Plaintiff pursuant to Section XV hereof;

   d.  Payment of any Taxes pursuant to paragraph 67 hereof, including, without limitation, taxes owed as a result of interest earned on the Settlement Fund Account, in a timely manner, subject to approval by Class Counsel and Cynosure;

   e.  Payment of any costs of settlement administration and the Notice Program; and

   f.  Payment of additional fees, costs, and expenses not specifically enumerated in subparagraphs (a) through (e) of this paragraph, consistent with the purposes of this Agreement, subject to approval of Class Counsel and Cynosure.

## XI.    Claims Process

69.    Any Settlement Class Member may submit a Claim to the Settlement Administrator seeking a distribution from the Settlement Fund, except any person who has already settled with Cynosure and released his or her claims relating to, based upon, resulting from, or arising out of facsimile transmissions advertising the availability or quality of property, goods, or services of Cynosure during the Class Period.

70.    A Claim may be submitted by filing a request with the Settlement Administrator using a Claim Form in the form attached hereto as Exhibit D.  Claimants may submit any Cynosure faxes they received with their Claim Form. Claims must be submitted by fax or mail to the Settlement Administrator, or through the Settlement Website, by the Claim Deadline.

71.    The Settlement Administrator shall have final authority to determine the adequacy and the legitimacy of any Claim.  The Settlement Administrator shall have discretion to require a Claimant to submit additional information and documentation to support a Claim.  In exercising its discretion under this paragraph, the Settlement Administrator shall take into account the burden imposed by requiring additional information and documentation and other appropriate considerations.

72.    The Settlement Administrator shall not reject any claim until after consultation with Class Counsel and Cynosure.  If, after that consultation, the Settlement Administrator rejects the claim, it shall provide written notice to the Claimant, and an opportunity to remedy curable deficiencies, and/or state any grounds for contesting the proposed decision of the Settlement Administrator, within 30 days of the date the Settlement Administrator sends notice of the rejection by mail (whichever is earlier).  A Claimant shall only receive one 30-day period in which to respond to the Settlement Administrator's proposed rejection of a Claim.  Untimely submission of a Claim is not a curable deficiency within the meaning of this paragraph.

73.    A Claim (or remedial submission) shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions.

74.    All Claim Forms shall be subject to such anti-fraud procedures and random and/or selective audits as the Settlement Administrator shall adopt in its discretion.  The Settlement Administrator shall be responsible for developing an appropriate plan to audit Claim Forms.  Class Counsel and Cynosure retain the right to independently audit Claim Forms if they choose to do so.

75.    Within the parameters set forth in this Section XI, further specific details of the Claims process shall be subject to the agreement of Class Counsel and Cynosure.  In the event that the Settlement Administrator determines, in its discretion, that any adjustment to the Claims process or deadlines is called for, the Settlement Administrator shall confer with Class Counsel and Cynosure.  Changes may be made to the Claims process set forth in this Section XI by agreement between Class Counsel and Cynosure, in order to facilitate

the working of the Claims process or accomplishment of the goals of the Claims process, subject to final approval by the Court.

## XII.    Distribution of Settlement Fund

76.    Within the later of 35 days after the Effective Date or 10 days after the resolution of any and all claims under Section XI, the Settlement Administrator shall distribute the Settlement Fund as set forth in this Section XII.

77.    To determine the distribution of the Settlement Fund, the Settlement Administrator shall first calculate the aggregate amount of Non-Claim Costs, defined to include the following:

   a.  The amount of any Court-awarded attorneys' fees and costs to Class Counsel;

   b.  The amount of any Court-awarded Service Award to Plaintiff;

   c.  The costs of settlement administration and the Notice Program, including the projected costs of the Settlement Administrator completing its duties of distribution of the Settlement Fund Payments and its duties following such distribution;

   d.  The amount of any Taxes to be paid pursuant to paragraph 67; and

   e.  All other costs and/or expenses incurred in connection with the Settlement not specifically enumerated in subsections (a) through (d) of this paragraph that are expressly provided for in this Agreement or have been approved by Class Counsel and Cynosure.

78.    The Settlement Administrator shall then subtract the Non-Claim Costs from the Settlement Fund, and the remaining amount shall be divided by the number of approved claims. Claimants who submit valid Cynosure faxes they received shall be considered to have submitted one claim per fax.

79.    The calculations just described shall yield the amount of each Claimant's Settlement Fund Payment.

80.    In no event shall Cynosure ever be required to pay more than a total of $8,500,000.00 to the Settlement Class, inclusive of all Settlement Fund Payments, attorneys' fees and costs, the Service Award, as well as the costs of settlement administration, and the Notice Program.

81.    Settlement Fund Payments will be made by check with an appropriate legend to indicate that it is from the Settlement. Checks will be prepared and mailed by the Settlement Administrator. Checks shall be valid for 180 days after issuance. The Settlement Administrator will make reasonable efforts to locate the proper address for any intended recipient of Settlement Fund Payments whose check is returned by the Postal Service as undeliverable, and will re-mail it once to the updated address.

## XIII.  Disposition of Residual Funds

82.     If any funds remain in the Settlement Fund Account after 180 days from the date the
        Settlement Administrator mails the last Settlement Fund Payment, such funds shall be
        divided by the number of approved claims and disbursed to claimants in a second
        disbursement in the manner described in paragraph 81, provided there are sufficient
        residual funds in the Settlement Fund Account to cover the cost of such a second
        disbursement.

83.     It is the parties' intention that the entire Settlement Fund Account will be distributed to
        valid claimants.  Disbursements will continue to occur until the Settlement Fund Account
        is fully exhausted or the Court determines that the administrative cost of further
        disbursements exceeds the amount in the Settlement Fund Account.

## XIV.  Releases

84.     As of the Effective Date, Plaintiff and each Settlement Class Member, each on behalf of
        himself or herself or itself and on behalf of his or her or its respective predecessors,
        successors, assigns, parent corporations, subsidiaries, affiliates, holding companies,
        divisions, unincorporated business units, joint venturers, partners, insurers, officers,
        directors, shareholders, managers, employees, agents, servants, representatives, officials,
        attorneys, associates, trustees, heirs, assigns, and beneficiaries, shall automatically be
        deemed to have fully and irrevocably released and forever discharged Cynosure and each
        of its present and former parents, subsidiaries, divisions, affiliates, predecessors,
        successors and assigns, and the present and former directors, officers, employees, agents,
        insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint
        venturers, independent contractors, wholesalers, resellers, distributors, retailers,
        predecessors, successors, and assigns of each of them, of and from any and all liabilities,
        rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys'
        fees, losses, and remedies, whether known or unknown, existing or potential, suspected
        or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from,
        arise out of, are based upon, or relate to the conduct, omissions, duties or matters between
        July 27, 2012 and Notice Approval and Preliminary Certification that were or could have
        been alleged in the Action, including, without limitation, any claims, actions, causes of
        action, demands, damages, penalties, losses, or remedies, whether based upon federal or
        state statutes or federal or state common law, relating to, based upon, resulting from, or
        arising out of facsimile transmissions advertising the availability or quality of property,
        goods, or services of Cynosure during the Class Period.

85. AS OF THE EFFECTIVE DATE, PLAINTIFF AND EACH SETTLEMENT CLASS MEMBER (EXCEPTING SETTLEMENT CLASS OPT-OUTS) SHALL FURTHER AUTOMATICALLY BE DEEMED TO HAVE WAIVED AND RELEASED ANY AND ALL PROVISIONS, RIGHTS, AND BENEFITS CONFERRED BY § 1542 OF THE CALIFORNIA CIVIL CODE OR SIMILAR LAWS OF ANY OTHER STATE OR JURISDICTION. SECTION 1542 OF THE CALIFORNIA CIVIL CODE READS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

86. Plaintiff or any Settlement Class Member may hereafter discover facts other than or different from those that he or she or it knows or believes to be true with respect to the subject matter of the claims released pursuant to the terms of paragraphs 84 and 85 hereof, or the law applicable to such claims may change. Nonetheless, each of those individuals, excepting Settlement Class Opt-Outs, expressly agrees that, as of the Effective Date, he or she or it shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this paragraph and paragraphs 84 and 85 hereof. Further, each of those individuals, excepting Settlement Class Opt-Outs, agrees and acknowledges that he or she shall be bound by this Agreement, including by the releases contained in this paragraph and in paragraphs 84 and 85 hereof, and that all of their claims in the Action shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he or she never receives actual notice of the Settlement and/or never receives a distribution of funds from the Settlement.

## XV. Payment of Attorneys' Fees, Costs, and Service Award

87. Cynosure agrees not to oppose Class Counsel's (1) request for attorneys' fees in an amount not to exceed one quarter of the Settlement Fund; and (2) an application for reasonable expenses incurred in the action. Any award of attorneys' fees and costs to Class Counsel shall be payable solely out of the Settlement Fund.

88. On the Effective Date, the Settlement Administrator shall pay from the Settlement Fund to Class Counsel all Court-approved attorneys' fees and costs of Class Counsel. In the event that the award of attorneys' fees and costs of Class Counsel is reduced on appeal, the Settlement Administrator shall only pay to Class Counsel from the Settlement Fund the reduced amount of such award, including interest accrued thereon. Class Counsel shall timely furnish to the Settlement Administrator any required tax information or forms before the payment is made.

89. The payment of attorneys' fees and costs of Class Counsel pursuant to paragraph 88 hereof shall be made through a wired deposit by the Settlement Administrator into the

attorney client trust account of Bock, Hatch, Lewis & Oppenheim, LLC. After the fees and costs have been deposited into this account, Bock, Hatch, Lewis & Oppenheim, LLC shall be solely responsible for distributing each Class Counsel firm's allocated share of such fees and costs to that firm.

90. Class Counsel will ask the Court to approve a service award of up to $5,000.00 for Plaintiff ("Service Award"). The Service Award is to be paid from the Settlement Fund within three business days of the Effective Date. The Service Award shall be paid to Plaintiff in addition to Plaintiff's Settlement Fund Payment. Plaintiff need not submit a Claim Form to receive a Settlement Fund Payment. Cynosure shall not oppose Class Counsel's request for payment of the Service Award.

## XVI. Termination of Settlement

91. This Settlement may be terminated by either Class Counsel or Cynosure by serving on counsel for the opposing Party and filing with the Court a written notice of termination within 45 days (or such longer time as may be agreed between Class Counsel and Cynosure) after any of the following occurrences:

   a. Class Counsel and Cynosure agree to termination;

   b. the Court rejects, materially modifies, materially amends or changes, or declines to approve the Settlement;

   c. an appellate court reverses the Final Approval Order, and the Settlement is not reinstated and finally approved without material change by the Court on remand within 270 days of such reversal;

   d. any court incorporates terms or provisions into, or deletes or strikes terms or provisions from, or modifies, amends, or changes, the Notice Approval and Preliminary Certification Order, Final Approval Order, or the Settlement in a way that Class Counsel or Cynosure reasonably considers material;

   e. the Effective Date does not occur; or

   f. any other ground for termination provided for elsewhere in this Agreement.

92. Cynosure also shall have the right to terminate the Settlement by serving on Class Counsel and filing with the Court a notice of termination within 14 days of its receipt from the Settlement Administrator of the final report specified in paragraph 50(h) hereof, if the number of Settlement Class Members who timely request exclusion from the Settlement Class equals or exceeds the number specified in the separate letter executed concurrently with this Settlement by Class Counsel and Cynosure. The number shall be confidential except to the Court, who shall upon request be provided with a copy of the letter for *in camera* review.

93. No Party may terminate the Settlement for any reason other than those set forth in paragraphs 91 and 92, including without limitation, (1) the outcome of the United States

Court of Appeals for the D.C. Circuit's decision in *Bais Yaakov of Spring Valley v. FCC*, No. 14-1234, and (2) the amount of attorneys' fees awarded to Class Counsel or of any Service Award awarded to Plaintiff.

## XVII. Effect of a Termination

94. The grounds upon which this Agreement may be terminated are set forth in paragraphs 91 and 92 hereof. In the event of a termination as provided therein, this Agreement shall be considered null and void; all of Cynosure's obligations under the Settlement shall cease to be of any force and effect; the amounts in the Settlement Fund shall be returned to Cynosure in accordance with paragraph 95 hereof; and the Parties shall return to the status quo ante in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved, including, but not limited to, Plaintiff's right to seek class certification and Cynosure's right to oppose class certification.

95. In the event of a termination as provided in paragraphs 91 and 92 hereof, and after payment of any invoices or other fees or expenses mentioned in this Agreement that have been incurred and are due to be paid from the Settlement Fund, the Settlement Administrator shall return the balance of the Settlement Fund to Cynosure within seven days of termination.

96. The Settlement shall become effective on the Effective Date unless earlier terminated in accordance with the provisions of paragraphs 91 and 92 hereof.

97. In the event the Settlement is terminated in accordance with the provisions of paragraphs 91 and 92 hereof, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose, without prejudice to Plaintiff's right to seek class certification, and Cynosure's right to oppose class certification. In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

## XVIII. No Admission of Liability

98. Cynosure disputes the claims alleged in the Action and does not by this Agreement or otherwise admit any liability or wrongdoing of any kind. Cynosure has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Action.

99. Class Counsel and Plaintiff believe that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, the likelihood of certification of a class for litigation purposes, and the likelihood of success on the merits of the Action. Class Counsel and Plaintiff have concluded that the proposed Settlement

set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

100. The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

101. Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiff or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency or other tribunal.

102. In addition to any other defenses Cynosure may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

## XIX.  Miscellaneous Provisions

103. Gender and Plurals. As used in this Agreement, the masculine, feminine, or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

104. Binding Effect. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

105. Prior Agreement Superseded. This Agreement supersedes and replaces the Settlement and Agreement and Release executed by the Parties on January 26, 2017.

106. Cooperation of Parties. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

107. Obligation To Meet And Confer. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted.

108. Integration. This Agreement (along with the letter referenced in paragraph 92 hereof) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. No covenants, agreements, representations,

or warranties of any kind whatsoever have been made, or relied upon, by any Party hereto, except as provided for herein.

109.   No Conflict Intended. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

110.   Governing Law. The Agreement shall be construed in accordance with, and be governed by, the laws of the Commonwealth of Massachusetts, without regard to the principles thereof regarding choice of law.

111.   Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required. Any signature submitted by facsimile or through e-mail of an Adobe PDF shall be deemed an original.

112.   Jurisdiction. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

113.   Notices. All notices to Class Counsel provided for herein, shall be sent by e-mail with a hard copy sent by overnight mail to:

Phillip A. Bock
BOCK, HATCH, LEWIS & OPPENHEIM
134 N LaSalle St., Suite 1000
Chicago, IL 60602
Tel.: (312) 658-5500
Fax: (312) 658-5501
E-mail: phil@bockhatchllc.com

Randall K. Pulliam
CARNEY, BATES & PULLIAM, PLLC
519 West 7th Street
Little Rock, AR 72201
Tel.: (510) 312-8500
E-mail: rpulliam@cbplaw.com

Alan L. Cantor
SWARTZ & SWARTZ, P.C.

10 Marshall Street
Boston, MA 02108
Tel.: (617) 742-1900
Fax: (617) 367-7193
E-mail: acantor@swartzlaw.com

All notices to Cynosure, provided for herein, shall be sent by e-mail with a hard copy sent
by overnight mail to:

Sean Flanagan
CYNOSURE, INC.
5 Carlisle Road
Westford, Massachusetts 01886
Tel.: (978) 513-4677
E-mail: sean.flanagan@cynosure.com

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
E-mail: alan.schoenfeld@wilmerhale.com

John J. Butts
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6515
Fax: (617) 526-5000
E-mail: john.butts@wilmerhale.com

The notice recipients and addresses designated above may be changed by written notice.
Upon the request of any of the Parties, the Parties agree to promptly provide each other
with copies of objections, requests for exclusion, or other filings received as a result of
the Notice Program.

114.  Modification and Amendment. This Agreement may be amended or modified only by a
      written instrument signed by counsel for Cynosure and Class Counsel and, if the
      Settlement has been approved by the Court, such amendment or modification is approved
      by the Court.

115.  No Waiver. The waiver by any Party of any breach of this Agreement by another Party
      shall not be deemed or construed as a waiver of any other breach, whether prior,
      subsequent, or contemporaneous, of this Agreement.

116.  <u>Authority</u>.  Class Counsel, Plaintiff, counsel for Cynosure, and Cynosure represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation or entity included within the definitions of Plaintiff and Cynosure to all terms of this Agreement.  Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

117.  <u>Agreement Mutually Prepared</u>.  Neither Cynosure nor Plaintiff, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

118.  <u>Independent Investigation and Decision to Settle</u>.  The Parties understand and acknowledge that they:  (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement.  It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in any substantive or procedural law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law or changes in any substantive or procedural law, subsequently occurring or otherwise.

119.  <u>Receipt of Advice of Counsel</u>.  Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained in Section XIV hereof, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

Dated: __6/3/22_____

_____
Dr. Steven Collier, Chief Executive Officer, *for ARcare, Inc.*

Dated: _____

_____
Sean Flanagan, VP, Legal, *for Cynosure, Inc.*

116. <u>Authority</u>. Class Counsel, Plaintiff, counsel for Cynosure, and Cynosure represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation or entity included within the definitions of Plaintiff and Cynosure to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

117. <u>Agreement Mutually Prepared</u>. Neither Cynosure nor Plaintiff, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

118. <u>Independent Investigation and Decision to Settle</u>. The Parties understand and acknowledge that they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in any substantive or procedural law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law or changes in any substantive or procedural law, subsequently occurring or otherwise.

119. <u>Receipt of Advice of Counsel</u>. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained in Section XIV hereof, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

Dated: _____

_____
Dr. Steven Collier, Chief Executive Officer, *for ARcare, Inc.*

Dated: 6/3/2022

*Sean Flanagan*
_____
Sean Flanagan, VP, Legal, *for Cynosure, Inc.*

Dated: _6/3/22_

_____
Phillip A. Bock
BOCK, HATCH, ~~LEWIS~~ & OPPENHEIM, LLC
134 N LaSalle St., Suite 1000
Chicago, IL 60602
*Class Counsel*

Dated: _6/3/22_

_____
Randall K. Pulliam
CARNEY BATES & PULLIAM, PLLC
519 West 7th Street
Little Rock, AR 72201
*Class Counsel*

Dated: _____

_____
Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
*Counsel for Cynosure, Inc.*

Dated: _____   _____

Phillip A. Bock
BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 N LaSalle St., Suite 1000
Chicago, IL 60602
*Class Counsel*

Dated: _____   _____

Randall K. Pulliam
CARNEY, BATES & PULLIAM, PLLC
519 West 7th Street
Little Rock, AR 72201
*Class Counsel*

Dated: _6/3/2022_____   *Alan Schoenfeld*

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
*Counsel for Cynosure, Inc.*

## CERTIFICATE OF SERVICE

I am an attorney of record in this case. I hereby certify that on June 3, 2022, I caused a copy of the foregoing to be filed via the Court's ECF filing system, whereupon all counsel of record were served.

/s/ Phillip A. Bock
Attorney for Plaintiff